*1266 OPINION.
SieekiN :
The original petition filed in this proceeding raised the issue whether taxable income was received by petitioners at March 20, 1920, when they caused the corporation to be dissolved and took over the assets as partners. Article 1566 of Regulations 45, which states they did not, was cited in support of this position. Petitioners now concede the question has been decided adversely. Hellmich v. Hellman, 275 U. S. 513 (Feb. 20, 1928); E. C. Huffman, 1 B. T. A. 52; Estate of D. F. Buchmiller, 1 B T. A. 380; F. D. Keim, 4 B. T. A. 1240; Alice M. Hastings, 8 B. T. A. 670. We conclude that taxable income was received.
The issues remaining in controversy are largely questions of fact involving the value of the corporate assets received in dissolution. The various assets will be considered in the order in which they were disposed of in the findings of fact.
Preliminary to such discussion, however, we shall inquire into respondent’s contention that petitioners can not prevail because in all their testimony with respect to the fair market value of the assets they have proceeded upon the erroneous theory that such assets should be valued as if the business of the corporation were being liquidated. Respondent further states that there is no evidence as to the value of the assets as a business unit.
The testimony referred to was given in reply to questions as to the fair market value of the several assets set out in our findings of fact. The testimony discloses the opinion of qualified witnesses as to what value would be agreed upon by a willing seller and a willing buyer with respect to each such asset. It is clear that no witness was testifying as to forced sale values. In his cross-examination, counsel for respondent failed to develop a difference in fact between the values of record and the alleged values considering the assets as a part of a going business. He succeeded only in showing that at least some of the witnesses regarded the values testified to by them as fair values though the assets be regarded as a part of the whole business.
It should be noted that counsel for petitioner in taking up the assets separately at the hearing followed the method.of valuation used by the revenue agent in making his report, which is the basis *1267 for the deficiencies asserted. The report lists the assets and sets down the value ascribed to each such asset.' The sum of such values is then recommended as the total value of the assets received by petitioners upon dissolution. No good will, going concern, or any other similar asset is contained in the agent’s list. Petitioner merely takes the list thus provided and establishes by testimony and other evidence that the values assigned to the various assets were excessive, thereby reducing the sum total.
The opinions as to the fair market value of accounts receivable varied from 50 to 60 per cent of their face value. We have found that they were worth 72 per cent, in view of the evidence that only about 35 per cent of the accounts were outstanding from the preceding May 1, and the extent of the collections made by the partnership before the close of 1920.. Such fair market value represents the basis for computing future gain or loss to the partners upon the accounts.
The respondent points out that any amount recovered by the partnership before the close of the year in excess of such basis should be reflected in the income of the petitioners for 1920, and, to the extent of such excess, serves to offset any reduction in income due to our reducing the income from dissolution by discounting face value r.o reach fair market value.
Where the accounts were paid in full before the close of the year the reduction in income of the petitioners due to discounting the face value of the accounts to reach actual value when received is exactly offset by the increase in the respective incomes due to excess of collections over basic cost. Accordingly, we need consider only those accounts which the evidence does not show as having been paid in full at the close of the year. As the alleged offset is affirmatively pleaded by respondent, any deficiencies in the evidence must be resolved against him.
In some instances the payments received were less than the additional charges made for goods sold by the partnership. As to such accounts, which were of the total face value of $22,753.60 when received by the partnership, we are unable to determine whether the payments were applied against the old account or the subsequent purchases, as there is no evidence upon that point. Accordingly, we are unable to determine any partnership income due to excess of collections over basic cost which serves to offset reductions of income due to such accounts being discounted 28 per cent off face value to reach fair value. This reduction of income, realized on dissolution upon this class of accounts, amounted to 28 per cent of the above total. As no offsetting income was established, income will be reduced by that amount. The computation productive of such result, is similar in principle to the one set forth in the paragraph below regarding another class of accounts.
*1268 The list set out in the findings of fact contains all the accounts (not already discussed or taken up separately below) where we can determine there was something paid against the old account. The treatment to be accorded this class of accounts can best be shown by example. In the account of the Atchison Lea Products Co. the face value of the old account was $203.03. Of such amount we can determine that $708.21 (the amount of payment) less $534.72 (the charges for additional merchandise) or $173.49 was realized in cash by the partnership leaving $29.54 balance carried over. To the extent the face value was paid, reductions of income (due to discounting face value to reach actual value when received in dissolution) are exactly offset by excess of collections over basic cost to the partnership. Accordingly, we need concern ourselves further only with the $29.54 balance. That amount consists of that much of the old account and should be reduced in closing inventory by 28 per cent thereof or $8.27 which is the amount of net decrease in petitioner’s income upon this account due to our finding the accounts were worth but 72 per cent of their face value after offsetting for collections in excess of such value. Realization of such income ($8.27) is, so far as we can ascertain, postponed until the sum to which it relates ($29.54) is collected. The same result may be reached by first reducing opening accounts receivable to 72 per cent of their face and varying the manner of the computation accordingly.
The accounts charged off in whole or in part are tabulated in a separate list in our findings of fact. We are not informed whether the amounts charged off were claimed or allowed as bad debt deductions. Accordingly the charge-off must be disregarded and should be treated as balance due to make the above described computations.
Our findings of fact are decisive of the questions pertaining to inventories. Adjustments will be made accordingly. The controversy regarding realty values is similarly disposed of by our findings of fact requiring reductions as indicated.
The remaining questions raised are covered by our findings of fact. Adjustments will be made as indicated in the items termed Liberty bonds and War Savings stamps; plant and machinery; furniture and fixtures; horses and wagons; thresher, and Cairo Real Estate & Improvement Co. stock. Whether the latter became worthless before or after dissolution makes no difference, as, in any event, it was worthless prior to the close of the taxable year.
The income from dissolution will further be reduced by the amount of taxes accrued as a liability against the corporation. The depreciation deduction allowed the partnership will be recomputed, reducing the cost used by respondent to the values found.

Judgment will he entered under Rule SO.